UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMETHIA BROWN,

     Plaintiff,

v.                                                                 Case No: 8:19-cv-2888-TPB-AAS

ADVANCED CONCEPT
INNOVATIONS, LLC,

     Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law," filed on November 12, 2020. (Doc. 38). Plaintiff Timethia Brown filed a response in opposition on December 10, 2020. (Doc. 45). Upon review of the motion, response, court file, and the record, the Court finds as follows:

**Background**[1]

Plaintiff is a former employee of Defendant Advanced Concept Innovations, LLC, a contract packaging and manufacturing company. According to Plaintiff, she suffered from ptyalism during a difficult pregnancy.[2] Plaintiff alleges that she was

---

[1] On summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *See Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008).

[2] Ptyalism is a condition that causes an excess of saliva production. Although this condition can occur in anyone, ptyalism has been observed in pregnant women, particularly during the first trimester. That being said, ptyalism appears to be a relatively rare condition, even during pregnancy.

terminated on May 14, 2018, after she returned from leave under the Family and Medical Leave Act ("FMLA") due to her medical condition. She has asserted four claims for relief – disability discrimination under the Florida Civil Rights Act (Count I), race discrimination under the Florida Civil Rights Act (Count II), gender discrimination under Title VII (Count III), and pregnancy discrimination under Title VII, as amended by the Pregnancy Discrimination Act (Count IV).

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

Plaintiff has brought claims for disability and race discrimination under the Florida Civil Rights Act ("FCRA") (Counts I and II), gender discrimination under Title VII (Count III), and pregnancy discrimination under Title VII, as amended by the Pregnancy Discrimination Act (Count IV). Although these claims are brought under different statutory schemes, the analysis of each claim involves similar legal frameworks and tests.

### *Disability Discrimination (Count I)*

In its motion for summary judgment, Defendant first argues that Plaintiff cannot establish a prima facie case of disability discrimination. "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). To establish a prima facie case for disability discrimination, a plaintiff must show: (1) she has a disability, (2) she is a qualified individual with or without a reasonable accommodation, and (3) she was discriminated against because of her disability. *Id.* at 1255-56. Defendant appears to only contest the first and third elements.[3]

---

[3] Although Defendant dedicates significant space to arguing that Plaintiff cannot establish a prima facie disability discrimination case because Defendant did not "regard" her as having a disability, such argument is not well taken. Plaintiff alleges that she actually had a disability. The "regarded as" provision of § 12102(2)(C) of the ADA is "intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998) (quoting *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996)).

Prima Facie Case

*Disability*

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Nevertheless, "not every impairment will constitute a disability within the meaning of [the ADA]." 29 C.F.R. § 1630.2(j)(1)(ii). When determining whether Plaintiff is disabled under the ADA, the Court must: (1) consider whether the alleged disability was a physical or mental impairment; (2) identify the activities impaired and determine whether they are "major life activities;" and (3) determine whether the impairment substantially limited these activities. *See, e.g.*, *Hudson v. Tyson Farms, Inc.*, 769 F. App'x 911, 915 (11th Cir. 2019) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). Since symptoms of an impairment can vary widely from person to person, courts must review each disability claim on a case-by-case basis, with analysis based on the effect of that impairment on the life of the individual rather than simply on the name or diagnosis of the impairment. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 (11th Cir. 2007).

Defendant argues that Plaintiff cannot show that she has a disability because she cannot demonstrate that her temporary condition – ptyalism – substantially limited one or more of her major life activities or was so severe or atypical to rise to the level of being a disability since the only limitation she had was the urge to constantly spit. The Court disagrees. Plaintiff has asserted and put forth evidence to show that ptyalism limited her ability to work, which is a major life activity. *See*

29 C.F.R. § 1630.2(i)(1)(i) (explicitly including "working" as a major life activity). "Determining whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury. . . ." *Irizarry v. Mid Fla. Cmty. Servs., Inc.*, No. 8:08-cv-454-T-17TBM, 2009 WL 2135113, *3 (M.D. Fla. July 14, 2009). Furthermore, although Plaintiff's pregnancy-related ptyalism may have only been a "temporary" condition that occurred during her pregnancy, temporary pregnancy-related conditions and complications can constitute disabilities under the ADA. *See, e.g.*, *Mayorga v. Alorica, Inc.*, No. 12-21578-CIV, 2012 WL 3043021, at *5 (S.D. Fla. July 25, 2012) ("[W]here a medical condition arises out of a pregnancy and causes an impairment separate from the symptoms associated with a healthy pregnancy, or significantly intensifies the symptoms associated with a healthy pregnancy, such medical condition may fall within the ADA's definition of disability."). "[T]he determination of whether the nature, duration, and severity of [pregnancy] complications and symptoms qualify as a disability under the ADA is usually a question of fact that requires an individualized determination. . . ." *Id*.

Viewing the facts in light most favorable to Plaintiff, as the Court is required to do at this stage of the proceedings, the Court finds that Plaintiff has provided sufficient evidence for a reasonable jury to find that she was significantly restricted as to the conditions and manner of her ability to work as compared to the average person. Consequently, a reasonable jury could find that Plaintiff suffered from an impairment at the time her employer refused to accommodate her and instead

discharged her. *See Gabriel v. City of Chicago*, 9 F. Supp. 2d 974, 981 (N.D. Ill. 1998).

*Discrimination*

Defendant further argues that Plaintiff cannot establish that she was discriminated against on the basis of her disability because there is no direct or circumstantial evidence to show that the disability had anything to do with the decision to deny her accommodation request, which was unreasonable. Plaintiff asserts that she was terminated because of her condition.

The record in this case shows that Plaintiff suffered from a condition that does not appear to be a function of a normal pregnancy. She requested an accommodation to use a spit cup, and when that accommodation was denied, she felt she had no choice but to resign.[4] Based on these facts, a reasonable jury could conclude that she was discriminated against on the basis of her disability. Although Defendant contends that Plaintiff's accommodation request was unreasonable, the reasonableness of an accommodation request is traditionally a question of fact for the jury to determine. *See Snead v. Fla. Agric. & Mech. Univ. Bd. Of Trs.*, 724 F. App'x 842, 847 (11th Cir. 2018) (concluding that district court did not err in denying judgment as a matter of law because, among other things, a reasonable jury could have determined that requested ADA accommodation was

---

[4] In his deposition, Matthew Muller testified that although he was "empathetic" to Plaintiff's condition, he told her that Defendant could not operate in an environment where she had to have a spit cup. (Doc. 39-3 Muller Deposition at 48-49). He later reiterated that if Plaintiff had to routinely spit in a cup, there was no position in which she could be accommodated. (*Id.* at 52).

reasonable); *Menefee v. Action Res., LLC*, No. 2:18-cv-01208-CLM, 2020 WL 7343992, at *6-7 (N.D. Ala. Dec. 14, 2020) (denying summary judgment because, among other things, a reasonable juror could decide that the plaintiff's requested accommodation was reasonable). As such, the Court concludes that Plaintiff has established a prima facie case for disability discrimination under the FCRA.

### Nondiscriminatory Reason for Action

Because Plaintiff has established a prima facie case, the burden then shifts to Defendant to provide a valid, nondiscriminatory reason for its actions. The Eleventh Circuit has held that a defendant's burden to provide nondiscriminatory reasons for its actions is "a low bar to hurdle." *Flowers v. Troup Cty, Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (internal quotations omitted). The defendant "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Vargas v. Michaels Stores, Inc.*, No. 8:16-cv-1949-T-33JSS, 2017 WL 2931379, at *14 (M.D. Fla. June 10, 2017) (quoting *Weston-Brown v. Bank of Am. Corp.*, 167 F. App'x 76, 80 (11th Cir. 2006)).

Defendant is a contract packaging and manufacturing company that is ISO certified and FDA-regulated for medical devices, drugs, food, and cosmetics. Defendant contends that the requested accommodation – use of a spit cup – would violate its own sanitary and cleanliness policies, federal guidelines, and contractual obligations. By producing a nondiscriminatory reason for its actions, Defendant has

met its burden of production, and the burden shifts back to Plaintiff to show that Defendant's proffered reason is pretextual.

Pretext

The Eleventh Circuit has observed that "[a] reason is pretextual only if it is false and the true reason for the decision is discrimination." *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 303 (11th Cir. 2020); *Langford v. Magnolia Adv. Mat., Inc.*, 709 F. App'x 639, 641 (11th Cir. 2017) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Evidence of pretext must be enough to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006). The evidence must, therefore, be sufficient to render the employer's nondiscriminatory explanations for its actions "unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 405 U.S. 248, 256 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973)). "The focused inquiry . . . requires the plaintiff to demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of*

*Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

In this case, Plaintiff contends that the requested accommodation – the use of a spit cup – could have been made since the vast majority of her job (80-90%) did not involve her going into the lab or other "clean" parts of the business.[5] She did not work primarily on the production floor; she was a clerical worker who worked in a trailer. *See* (Doc. 39-3 Muller Deposition at 16-17). She also had no access to the clean space where medical devices and implants were handled. *See* (*id*. at 10-11). Based on this evidence, it appears that a reasonable jury could find Defendant's proffered non-discriminatory reason pretextual. Because there is a genuine issue of material fact as to whether Defendant's proffered reason to not accommodate Plaintiff's disability was pretextual, summary judgment is not appropriate on this claim.

## *Pregnancy Discrimination (Count IV)*

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "The phrase 'because of sex' or 'on the basis of sex' in Title VII includes 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" *Hubbard v. Meritage*

---

[5] Although Defendant argues that being on the production floor at times was an "indispensable" part of Plaintiff's job, Defendant points to no record evidence to support this position. Even if Defendant could point to such record evidence, the issue of whether being on the production floor was truly an indispensable part of the job appears to be better suited for a jury to determine.

*Homes of Fla., Inc.*, 520 F. App'x 859, 862 (11th Cir. 2013) (quoting 42 U.S.C. § 2000e(k)).

To establish a prima facie case pregnancy discrimination, Plaintiff must establish: (1) she is a member of a protected class; (2) she requested an accommodation; (3) Defendant refused her accommodation, and (4) Defendant nonetheless accommodated others similar in their ability or inability to work. *See Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285 (11th Cir. 2020) (citing *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229 (2015)). In general, when alleging a discrimination claim, a plaintiff must show that an employer treated similarly situated employees not in the protected class more favorably. *Hubbard*, 520 F. App'x at 863. However, a plaintiff alleging pregnancy discrimination "can survive summary judgment by presenting circumstantial evidence 'that creates a triable issue concerning the employer's discriminatory intent.'" *Id*. (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

Defendant argues that Plaintiff's Title VII pregnancy discrimination claim must fail because Plaintiff cannot establish a prima facie case of pregnancy discrimination and, even if she could, Defendant has proffered a valid, non-discriminatory business reason to support its decision to deny her accommodation request. Defendant contends that although Plaintiff may be able to establish the first three elements of a prima facie pregnancy discrimination case, she is unable to establish the final element – that Defendant accommodated others in their ability or inability to work. Specifically, Defendant asserts that it did not provide any non-

pregnant workers the ability to carry and use a spit cup on their person at all times during their workday, including on the production floor.

Plaintiff does not identify any similarly situated comparators that were treated differently. But she has presented sufficient circumstantial evidence to show that her pregnancy played a significant role in her termination. Viewing the facts in light most favorable to Plaintiff, she has shown that ptyalism is a pregnancy-related condition, and that she requested an accommodation due to her ptyalism. Her request was denied, and she felt that she had no choice but to resign. Based on this evidence, the Court finds that Plaintiff has presented a triable issue of fact that she was discriminated against because of her pregnancy-related medical condition. As such, she has established a prima facie pregnancy discrimination case.

For the reasons discussed above, the Court finds that Defendant has produced a valid, nondiscriminatory reason for its actions, and that Plaintiff has provided sufficient evidence to establish that Defendant's proffered reason to deny her requested accommodation was pretextual.

Defendant additionally argues that Plaintiff's pregnancy discrimination claim is untimely because it was not included in her initial complaint that was filed before the expiration of the 90-day filing period. The pregnancy discrimination claim was instead included in the amended complaint, filed outside of the 90-day window. The Court has already addressed this same argument and concluded that the pregnancy discrimination claim is timely because it arises out of the same

conduct, transaction, or occurrence set forth in the original complaint. (Doc. 29). As such, the Court finds the motion for summary judgment is due to be denied as to Count IV.

### *Race Discrimination (Count II)*

In the motion, Defendant next argues that Plaintiff cannot establish a prima facie case of racial discrimination. Under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case for racial discrimination by showing: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to perform the job; and (4) her employer treated "similarly situated" employees outside her class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019); *see also McDonnell Douglas Corp.*, 411 U.S. at 802. Establishing a prima facie case creates an initial presumption of discrimination. *Flowers*, 803 F.3d at 1336. The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its actions." *See Lewis*, 918 F.3d at 1221 (quoting *Burdine*, 405 U.S. at 253). "Once the employer advances its legitimate, nondiscriminatory reason, the plaintiff's prima facie case is rebutted and all presumptions drop from the case." *Flowers*, 803 F.3d at 1336 (citing *Burdine*, 450 U.S. at 255). The burden then shifts back to the plaintiff to demonstrate that the defendant's reasons were a pretext for discrimination. *Lewis*, 918 F.3d at 1221.

Here, the Court finds that Plaintiff has established a prima facie case for racial discrimination. Plaintiff belongs to a protected class as an African-American.

She was subject to an adverse employment action – constructive termination.[6] Plaintiff was qualified to do the job. The only element at issue, therefore, appears to be the fourth element – whether Plaintiff has identified any similarly situated employees outside of her class that have been treated more favorably.

In her response in opposition, Plaintiff points to a biracial employee – Preeshee Gilmore – who was permitted to use a spit cup when she was suffering from the same pregnancy-related condition that Plaintiff suffered from. The Court finds that Gilmore qualifies as a similarly situated employee in all material respects, and Plaintiff has shown that Gilmore was treated more favorably. As such, Plaintiff has established a prima facie case of racial discrimination.

For the reasons discussed above, the Court finds that Defendant has produced a valid, nondiscriminatory reason for its actions, and that Plaintiff has provided sufficient evidence to establish that Defendant's proffered reason to deny her requested accommodation was pretextual.

Defendant also argues that Plaintiff's race discrimination claim is procedurally deficient because she did not exhaust her administrative remedies prior to filing suit. The Court has already addressed this argument – it concluded

---

[6] Defendant attempts to argue that Plaintiff was not subjected to an adverse employment action because she was not terminated and instead chose to resign. However, constructive discharge may constitute an adverse employment action. *See, e.g., Green v. Brennan*, 136 S. Ct. 1769, 1776-77 (2016) (explaining the constructive-discharge doctrine); *Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1355 (M.D. Fla. 2019) (same). The issue of whether Defendant's conduct in denying the requested accommodation was so severe or pervasive to alter the conditions of Plaintiff's employment was not adequately addressed by the parties. As such, the Court concludes that Defendant has not met its summary judgment burden here.

that Plaintiff exhausted her administrative remedies because a reasonable investigation by the Equal Employment Opportunity Commission ("EEOC") would likely have included investigation into race discrimination since Plaintiff had checked the race discrimination box on her EEOC charge. (Doc. 19). As such, summary judgment is not warranted upon Count II.

*Gender Discrimination (Count III)*

Defendant additionally argues that it is entitled to summary judgment on Count III because Plaintiff has failed to sufficiently establish any gender discrimination claims. Defendant notes that it is unclear whether Count III is based exclusively on Plaintiff's pregnancy or involves some other discrimination based on her gender. In any event, Defendant asserts that there is no record evidence sufficient to create an inference, much less prove, that Plaintiff was subject to gender discrimination.

As the Court previously noted, Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of gender discrimination, a plaintiff must show "that (1) she is a member of a group protected by Title VII, (2) she is entitled to, or qualified for her position, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who are not members of her protected class." *Brockman v. Avaya, Inc.*, 545 F. Supp. 2d 1248, 1252 (M.D. Fla. 2008).

To the extent that Plaintiff's gender discrimination claim is based on her pregnancy and pregnancy-related condition, the Court's analysis of Count IV applies. The motion is denied as to this ground. To the extent that Plaintiff's gender discrimination claim is based on anything else, she has not put forth sufficient evidence to survive summary judgment. Plaintiff has not identified any comparators treated differently on the basis of gender outside of the pregnancy issues discussed as part of the Court's analysis of Count IV. She also has not presented any circumstantial evidence to create a triable issue of fact as to whether Defendant intended to discriminate against Plaintiff based on her gender outside of the pregnancy issues discussed. *See Hubbard*, 520 App'x at 863 ("A triable issue of fact exists if the record, viewed in light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." (quoting *Smith*, 644 F.3d at 1328)). The motion is granted as to this ground.

***Mitigation***

Defendant finally argues that even if Plaintiff's claims survive summary judgment, her demands for front pay and back pay must be limited because she failed to mitigate her damages by applying for new positions and voluntarily removing herself from the labor market. Specifically, Defendant asserts that although she initially sought employment following her departure, Plaintiff failed to apply for any employment positions from January 30, 2019, through August 19, 2020.

Plaintiff applied for a number of jobs from May 18, 2018, until January 30, 2019. In her answers to Defendant's interrogatories, Plaintiff indicated that beginning in December 2018, she began her own business marketing crochet items that she made. While Defendant's argument appears persuasive, the determination of whether Plaintiff's efforts constitute a failure to mitigate cannot be determined on the record before the Court. After all, substantial case law reflects that a plaintiff's "decision to become self-employed may constitute reasonable diligence for purposes of the back pay determination." *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998) (collecting cases). The question of whether Plaintiff's decision to engage in a crochet business constitutes reasonable diligence is a question of fact for a jury. The motion is due to be denied as to this ground.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 38) is hereby **GRANTED IN PART** and **DENIED IN PART**.

(2) The motion is **GRANTED** to the extent that Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim in Count III to the extent that Count III asserts any claim not related to Plaintiff's pregnancy or pregnancy-related condition.

(3) The motion is otherwise **DENIED**.

(4) The Court will enter a final judgment once all claims have been resolved.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of February, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**